# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ISAAC WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-00785-KOB-JHE |
| | ) | |
| LEON BOLLING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Isaac Washington filed a *pro se* complaint and amended complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States. (Docs. 1 & 11). The Magistrate Judge entered a report on January 26, 2022, recommending that the court grant the defendants' motions for summary judgment and dismiss this action with prejudice. (Doc. 58). Washington filed objections to the report and recommendation on March 8, 2022. (Doc. 61). He sets out his objections in five subparts so the court will address them in similar fashion. (*Id*.).

### A. Objection I

Washington first objects to the Magistrate Judge's finding that the evidence did not establish that a conversation between Washington and Dr. Roth concerning an emergency off-site visit took place before April 26, 2018. (Doc. 61 at 1).

Washington asserts that he alleged in his complaint and other pleadings that this conversation occurred on April 9, 2018—the same day Dr. Roth attempted to remove Washington's tooth.  (Doc. 61 at 1–2).

Washington does not expressly state in his pleadings and response to summary judgment when this conversation occurred.  (Doc. 1 at 9; Doc. 11; Doc. 55 at 9, Washington Aff.).  Regardless, Washington does not dispute that after his tooth broke during the attempted extraction, Dr. Roth referred him to Dr. Bannon, an oral surgeon who routinely visited the institution, and prescribed Washington analgesics and antibiotics.  (Doc. 22-1 at 5, Roth Decl.; Doc. 22-2 at 7–8).  Accordingly, the evidence does not reflect that Dr. Roth was deliberately indifferent to Washington's serious dental needs immediately after the attempted extraction.  To the extent Washington complains that Dr. Roth did not deem his dental condition as an emergency, the mere difference of opinion between an inmate and prison medical staff as to treatment or diagnosis will not, by itself, state a constitutional violation. *See Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. 97, 107–08 (1976).

Next, Washington objects to the Magistrate Judge's finding that Dr. Roth provided him with a Special Needs Communication Form that directed prison officials to bring him to the dental clinic anytime he requested between April 4-30, 2018.  (Doc. 61 at 2–3).  Washington submitted copies of two Special Needs

Communication Forms that indicate Dr. Roth's instructions that prison staff escort Washington to the dental clinic at his request. (Doc. 24 at 4–5). The forms were effective from April 6-19, 2018, and April 18-31, 2018. (*Id*.). To the extent Washington contends Dr. Roth submitted this form on April 6, and not April 4, 2018, the court accepts this clarification.

Washington further contends that no evidence in the record supports that Dr. Roth asked Dr. King, the chief dental officer, if Dr. Bannon could make an unscheduled visit to the prison to extract the root fragment. (Doc. 61 at 3). But Dr. Roth noted his request to Dr. King in Washington's dental treatment record. (Doc. 22-2 at 8). Other than Washington's conclusory statement, he has not offered any evidence that Dr. Roth's treatment notes were incorrect or fabricated.

Similarly, Washington asserts the record contains no evidence concerning his emergency room visit to UAB Hospital on April 26, 2018. (Doc. 61 at 2, 4). However, Dr. Roth submitted records of Washington's dental treatment at UAB to this court on March 26, 2021, and served the same on Washington. (Doc. 30-1 at 19–22).

Washington maintains that Dr. Roth was deliberately indifferent to his serious dental needs because, even though Dr. Roth treated him from April 9, 2018, to April 30, 2018, the treatment did not prevent Washington from developing an intraoral infection. (Doc. 61 at 3). The Eighth Amendment does not require that a

3

prison physician act as a guarantor of a prisoner's medical condition.  The record evidence supports a finding that Dr. Roth prescribed Washington multiple courses of antibiotics.  (Doc. 22-1 at 6–7, Roth Decl.; Doc. 22-2 at 8, 10).  The fact that Washington suffered an infection despite Dr. Roth's treatment does not demonstrate that Dr. Roth was deliberately indifferent.  *See Adams v. Poag*, 61 F.3d at 1544, 1545 (11th Cir. 1995) (holding that whether governmental actors "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment").  Accordingly, Washington's objections on the foregoing grounds are **OVERRULED**.

### B. Objection II

Next, Washington objects to the Magistrate Judge's finding that defendants Johnson and Fox were not deliberately indifferent to his serious medical needs on May 3, 2018, when they denied him access to the infirmary to obtain narcotic pain medication.  (Doc. 61 at 4–5).  The medical evidence indicates that Dr. Roth examined Washington on the morning of May 3, 2018, and did not prescribe him narcotic medication but prescribed him a non-narcotic pain medication to keep on his person.  (Doc. 22-2 at 10).  Consequently, the Magistrate Judge concluded that Johnson and Fox were not deliberately indifferent to Washington's serious dental needs by preventing him from going to the infirmary for narcotic medication when

the attending doctor had not prescribed any.  The court agrees that Washington has not demonstrated that Johnson and Fox violated his constitutional rights on this occasion.

To the extent Washington contends Dr. Roth should have followed the UAB oral surgeon's recommendation to prescribe him narcotic pain medication, (doc. 61 at 5–6), his claim does not state a constitutional violation.  The oral surgeon's recommendation does not establish that Dr. Roth was deliberately indifferent by prescribing him a non-narcotic because a difference in professional opinion between doctors does not rise to the level of constitutional scrutiny.

In *Bismark v. Fisher*, 213 F. App'x 892, 896–97 (11th Cir. 2007), the Eleventh Circuit held that a prisoner could not establish that a prison physician was deliberately indifferent for failing to adopt an outside specialist's plan of care.  The Eleventh Circuit's explained:

> [I]t is well established that "a simple difference in medical opinion" does not constitute deliberate indifference.  Far from interfering with treatment once prescribed, Dr. Fisher was a physician who personally prescribed treatment for Bismark, albeit not that requested by Bismark. The Eighth Amendment did not compel Dr. Fisher to check his own medical training and judgment at the door, simply because he was informed that some other doctor at some other time had prescribed [a different course of treatment] for his patient.

*Id*. at 897 (citation omitted); *see White v. Napoleon*, 897 F.2d 103, 110 (3rd Cir. 1990) (explaining that similar to an inmate's disagreement with a doctor's professional judgment, no claim is stated when a doctor disagrees with the

professional judgment of another doctor because several acceptable ways may exist to treat a medical condition).

Washington has not demonstrated that Dr. Roth was deliberately indifferent to his serious dental needs by prescribing him a non-narcotic pain medication instead of the narcotic the outside oral surgeon recommended.  As such, Washington's objection is **OVERRULED**.

### C. Objection III

Washington contends that his diagnosis of an intraoral infection on April 30, 2018, despite Dr. Roth's treatment, establishes that defendants Bolling and Miree "recklessly chose to disregard [his] need for dental care for his broken tooth."  (Doc. 61 at 6).  But Bolling and Miree's respective positions did not require them to second-guess the actions of medical staff.  Rather, "supervisory officials are entitled to rely on medical judgments by medical professionals responsible for prisoner care." *Williams v. Limestone Cty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006). And they have no duty to directly supervise medical personnel or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional deprivation. *See Clark v. Sheffield*, 807 F. App'x 910, 917 (11th Cir. 2020) (holding that neither the sheriff nor the jail administrator were trained medical professionals and had no role in the inmate's examinations or course or treatment); *Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007) ("The

law does not impose upon [jailers] a duty to directly supervise health personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong."); *see also Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) (finding that in the absence of a reason to believe, or actual knowledge, that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference).

Washington has not established that Bolling and Miree were aware of the need to intervene in Dr. Roth's treatment and failed to do so.  Accordingly, Washington's objection on this ground is **OVERRULED**.

### D. Objection IV

In his fourth and final objection, Washington takes issue with the Magistrate Judge's conclusion that even if Washington stated a plausible claim against defendants Fox and Johnson, he has not established a supervisory liability claim against defendant Miree for failing to address the officers' actions on May 3, 2018. (Doc. 61 at 6–7).  Because Washington articulated no constitutional claim against Fox and Johnson, as discussed here, his claim against Miree in her supervisory capacity necessarily fails.  *See Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) ("We need not address the Appellant's claims of . . . supervisory liability

since we conclude no constitutional violation occurred."); *see also Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (stating that a claim for supervisory liability fails where there is no underlying constitutional violation). Accordingly, Washington's objection on this ground is **OVERRULED**.

After careful consideration of the record in this case and the Magistrate Judge's report and Washington's objections, the court **ADOPTS** the report and **ACCEPTS** the recommendation. Consistent with that recommendation, the court finds that the defendants' motions for summary judgment are due to be **GRANTED**.

The court will enter a separate Final Judgment.

DONE and ORDERED this 17th day of March, 2022.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE